IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Vernon Leroy Smith, | ) | No. CV-08-978-PHX-MHM (LOA) |
| Petitioner, | ) ) | **REPORT AND RECOMMENDATION** |
| vs. | ) ) | |
| Charles L. Ryan, et al. | ) ) | |
| Respondents. | ) ) ) | |
| _____ | ) | |

This matter is before the Court on Petitioner's Petition for Writ of Habeas Corpus. (docket # 1)  Respondents[1] have filed an Answer, docket # 12, to which Petitioner has replied, docket # 13.

**I. Factual and Procedural Background**

**A.  Factual Background**

On November 20, 2002, a Maricopa County grand jury indicted Petitioner on one count of fraudulent schemes and artifices, a class 2 felony; five counts of theft, class 2 felonies; and one count of illegally conducting an enterprise, a class 3 felony.  (Respondents' Exh. A)  The charges were based on evidence that Petitioner engaged in a Ponzi-type[2]

_____

[1]  Petitioner named Dora B. Schriro as a respondent in this matter.  Charles L. Ryan, the current director of the Arizona Department of Corrections, is substituted for Dora B. Schriro pursuant to Fed.R.Civ.P. 25(d).

[2]  The term "Ponzi" scheme derives from the activities of Charles Ponzi in 1919.  After World War I, Ponzi represented to investors that he could profit from differences in currency

scheme, involving millions of dollars and victimizing over 4,000 people.  (Respondents' Exh. B)

On December 22, 2003, Petitioner entered into a plea agreement pursuant to which he pled guilty to Amended Count Two - theft, a class 3 felony with one with a historical prior conviction; and Count Four - theft, a class 2 felony.  (Respondents' Exhs. C, D)  In the plea agreement, Petitioner admitted the following factual bases of the theft offenses and his prior conviction:

**Amended Count Two**

Between the dates of March 7 and March 9, 2001, Vernon Leroy Smith, Jr. knowingly and without lawful authority, in Maricopa County, obtained money in excess of $3,000 by means of material misrepresentations with the intent to deprive the owners of the money and converted the money for an unauthorized use.  This conduct occurred when [Petitioner] received funds through an advanced fee loan scheme, that was, in fact, an illegal pyramid scheme. [Petitioner] misrepresented that the funds to pay investors were invested in long term investments generating a high rate of return when, instead, [Petitioner]

---

exchange rates.  Ponzi promised investors a  50 percent return on 45-day promissory notes. Ponzi, however, did not make any investments.  Ponzi issued over 14 million dollars in notes, and, using funds he received from investors, made payments of about 9 million dollars to his investors  A Boston newspaper exposed Ponzi's scheme on August 1, 1920.  Ponzi's records revealed that he had "never engaged in a regular business, that no source of profit existed, and that he was insolvent from the inception of his venture."  *In Re Independent Clearing House Company*, 41 B.R. 985, 994 n. 12 (1984).  Ponzi was sentenced to prison, and was paroled three and a half years later.  He was subsequently arrested in Florida and sentenced to prison for real estate fraud.  After serving seven years in prison, he was deported to Italy, where Mussolini gave him a job in the finance ministry.  Ponzi eventually moved to South America where "he died penniless in a charity ward in Rio de Janeiro."  *In Re Independent Clearing House Company*, 41 B.R. at 994 n. 12 (citing *Cunningham v. Brown*, 265 U.S. 1, 7-9 (1924), *In re Ponzi*, 268 F. 997 (D.Mass.1920)).

1    transferred said funds to Summerset Nassau Ltd. Account for his own use.

2    [Petitioner] admits the prior conviction of Wire Fraud committed on April 27,
     1995, in CR-00-141BR in the United States District Court for the District of
3    Oregon for which judgement (sic) of guilt and sentencing was entered on
     December 16, 2002. [Petitioner] was represented by counsel throughout the
4    proceedings in this matter.

5    **Count Four**

6    On or about April 13, 2001, [Petitioner] knowingly and without lawful
     authority, in Maricopa County, obtained money in excess of $25,000 by means
7    of material misrepresentations with the intent to deprive the owners of the money
     and converted the money for an unauthorized use.  This conduct occurred when
8    [Petitioner] received funds through an advanced fee loan scheme, that was, in fact,
     an illegal pyramid scheme.  [Petitioner] misrepresented that the funds to pay
9    investors were invested in long term investments generating a high rate of return
     when, instead, [Petitioner] transferred said funds to his personal bank account
10   at Bank of America.

11   (Respondents' Exh. C at attachment B; Exh. E at 10-13)  In exchange for Petitioner's plea,

12   the remaining charges were dismissed.  (Respondents' Exh. C)  During the December 22,

13   2003 change of plea hearing, the trial court[3] explained the following: Petitioner's sentencing

14   exposure for the two offenses; the credit Petitioner would received for time served from

15   March 1, 2003; the restitution figures in the amounts of $872,500 and not to exceed

16   $4,300,000; the rights Petitioner forfeited by pleading guilty; and Petitioner's rights to

17   review.  (Respondents' Exh. E at 5-10; Exh. C at attachment A)   Petitioner advised the court

18   that he had read the plea agreement, discussed its terms with counsel, and understood those

19   terms.  (Respondents' Exh. E at 4-5)  He further stated that the written plea agreement

20   contained everything to which he had agreed, that he was not forced or threatened to enter

21   the plea, and that he pled guilty voluntarily.  (Respondents' Exh. E at 5)   Petitioner affirmed

22   that he understood the rights he was forfeiting by pleading guilty.  (Respondents' Exh. E at

23   9-10)   Petitioner admitted the factual bases for his plea and his prior conviction.

24   (Respondents' Exh. E at 10-12)

25          During the January 23, 2004 sentencing hearing, defense counsel agreed that

26   Petitioner should receive 328 days presentence incarceration credit.  Defense counsel also

27

28          [3] The Honorable Barry C. Schneider presided.

acknowledged that Petitioner had a "lengthy" criminal history.  (Respondents' Exh. G at 24,

33)  That same day, the trial court sentenced Petitioner to an aggravated term of 10 years

imprisonment on Amended Count Two - theft, a class 3 felony with one historical prior

felony conviction.  The court suspended the imposition of sentence on Count Four and

ordered Petitioner to serve 7 years probation to commence upon his release from the

Department of Corrections.  (Respondents' Exhs. F, G)   In support of the aggravated

sentence, the court explained:

> With respect to Count II [theft with an admitted historical prior felony
> conviction], probation is not available, the Court must consider the
> aggravating and mitigating circumstances.  The State recommends an
> aggravated term, the presentence writer recommends an aggravated term.
> Defense asks for a mitigated term.
>
> In balancing these factors, the Court cannot lose sight of a number of matters.
> There are prior felony convictions, there are multiple, multiple victims.  These
> crimes were committed for pecuniary gain.  They were committed while he
> was an absconder under indictment in another jurisdiction.
>
> The magnitude of the loss is significant that was suffered by the victims.
> The emotional injury suffered by the victims is significant.  The mitigating
> factors that are offered are that he's remorseful, that he promises to make
> his first priority the payment of restitution.  Mitigation is also offered that his
> family will suffer a hardship, his wife and his children.  And the cooperation,
> as well, with law enforcement agencies.
>
> When all is said and done, I  - especially considering the victims who have
> come forward and the many victims who have submitted impact statements
> that, in conclusion, I find that the aggravating factors are substantially
> significant to warrant an aggravated term.

(Respondents' Exh. G at 36-37)

## B.  Post-Conviction Proceedings

On March 8, 2004, Petitioner filed a timely notice of post-conviction relief and

requested appointment of counsel.  (Respondents' Exh. H)   On January 10, 2005,

Petitioner's counsel filed a notice advising the court that she had completed post-conviction

review and that Petitioner had "instructed counsel not to file a petition on his behalf, stating

that [Petitioner] wishes to file a *pro per* petition raising issues of his choosing."

(Respondents' Exhs. I, J)   Counsel also requested an extension of time to allow Petitioner to

file a *pro per* petition.  (*Id.*)   On September 12, 2005, Petitioner filed a petition for post-

conviction relief and request for a restitution hearing.  (Respondents' Exh. K)   Petitioner

argued that: (1) the trial court erred in aggravating his sentence in violation of *Apprendi v.*

*New Jersey*, 530 U.S. 466 (2000) and *Blakely v. Washington*, 542 U.S. 296 (2004); (2) the

trial court erred in relying upon undisclosed victim impact statements in sentencing

Petitioner; and (3) the trial court improperly calculated Petitioner's presentence incarceration

credit.  (*Id.*)  On January 17, 2006, the trial court "summarily" dismissed the petition and

noted that, "[b]y his stipulation, [Petitioner] waived any objections to the amount of

restitution."  (Respondents' Exh. N)

Before the trial court dismissed the petition for post-conviction relief, on December

30, 2005, Petitioner filed a petition for review in the Arizona Court of Appeals.

(Respondents' Exh. O; docket # 1 at 3)  Petitioner raised the same issues that he presented in

his petition for post-conviction relief.  (docket # 1 at 3)  On November 13, 2006, the Court

of Appeals denied review.  (docket # 1 at 19, November 13, 2006 Order)

On December 29, 2006, Petitioner filed a petition for review with the Arizona

Supreme Court which was denied on May 22, 2007.  (Respondents' Exhs. O, P; docket # 1

at 21, May 22, 2007 Order)

**C. Petition for Writ of Habeas Corpus**

Thereafter, Petitioner filed a timely petition for writ of habeas corpus in this Court.

(docket # 1; docket # 12 at 6)  Petitioner raises the following claims: (1) the trial court

violated his Sixth Amendment rights by imposing an aggravated sentence based on factors

that were not found by a jury; (2) the trial court violated his Sixth and Fourteenth

Amendment rights by using a historical prior conviction as an aggravating factor to enhance

his sentence; (3) the trial court's consideration of victim impact statements violated

Petitioner's Sixth Amendment right to confront witnesses against him; (4) the State violated

the Fifth and Sixth Amendments by failing to give Petitioner sufficient notice of the charges

against him and of the State's intention to seek an aggravated sentence; and (5) the trial

court failed to correctly calculate Petitioner's presentence incarceration credit.  (docket # 1

1    at 24-28)   Respondents assert that the Petition should be denied.  (docket # 12)   Petitioner

2    opposes that assertion.  (docket # 13)

3    **II.      Grounds Three and Five**

4           Respondents assert that Petitioner's claims raised in Grounds Three and Five are not

5    cognizable on federal habeas corpus review.  (docket # 12 at 7-9)   The Court will discuss

6    this issue below.

7           Title 28 U.S.C. § 2254(a) defines the scope of review for federal habeas corpus

8    petitions:

9           The Supreme Court, a Justice thereof, a circuit judge, or a district court shall
            entertain an application for a writ of habeas corpus in behalf of a person in
10          custody pursuant to the judgment of a State court only on the ground that he is
            in custody in *violation of the Constitution or law or treaties of the United*
11          *States.*

12   28 U.S.C. § 2254(a)(emphasis added).  Accordingly,  "[a] habeas petition must allege the

13   petitioner's detention violates the constitution, a federal statute or a treaty." *Franzen v.*

14   *Brinkman*, 877 F.2d 26 (9th Cir.1989), *cert. denied, Franzen v. Deeds* 493 U.S. 1012 (1989)

15   (citing 28 U.S.C. § 2254(c)(3)).  "[F]ederal habeas corpus does not lie for errors of state

16   law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764,

17   780 (1990)).  The purpose of habeas proceedings under § 2254 is to ensure that state

18   convictions satisfy federal constitutional requirements applicable to states.  *Burkey v. Deeds*,

19   824 F.Supp. 190, 192 (D.Nev. 1993).  The federal district court does "not sit as a super state

20   supreme court." *Id.*  Rather, federal courts may only intervene in state proceedings to

21   correct errors of constitutional magnitude. *Id.*  (citing *Oxborrow v. Eikenberry*, 877 F.2d

22   1395, 1400 (9th Cir. 1989)).

23          **A.  Ground Three**

24          In Ground Three, Petitioner argues that the trial court violated his Sixth Amendment

25   right to confrontation by considering victim impact statements at sentencing.  (docket # 1 at

26   26, 35-37)  Respondents argue that the trial court's consideration of victim impact

27   statements is a matter of state law, not cognizable on federal habeas corpus review.

28

1    Arizona Rule of Criminal Procedure 39(a) provides that a victim has the "right to be

2   heard" and can exercise this right "by appearing personally, or where legally permissible and

3   in the discretion of the court, by submitting a written statement, an audiotape or videotape."

4   Ariz.R.Crim.P. 39(a).  Arizona Rule of Criminal Procedure 39(b)(7) provides that a victim

5   has the right to be heard at sentencing.  Likewise, the Arizona Constitution provides that

6   "[t]o preserve and protect victims' rights to justice and due process, a victim of crime has a

7   right . . . [t]o be heard at any proceeding involving a post-arrest release decision, a

8   negotiated plea, and sentencing."  Ariz.Const. § 2.1(A)(4).  Arizona law requires the trial

9   court to hear from victims of crime.  In this case, the trial court heard from the victims

10   through victim impact statements.

11    The trial court's consideration of victim impact statements pursuant to Arizona Rule

12   of Criminal Procedure 39 and the Arizona Constitution was a matter of state law.  To the

13   extent that Petitioner's allegations in Count Three challenge the application of state law,

14   those claims are  not cognizable on federal habeas corpus review.  *See* 28 U.S.C. § 2254;

15   *McGuire*, 502 U.S. at 67-68; *Jackson v. Ylst*, 921 F.2d 882 (9th Cir. 1990) (federal court has

16   no authority to review state application of state law); *Miller v. Vasquez*, 868 F.2d 1116,

17   1118-19 (9th Cir. 1989) (refusing to consider alleged errors in violation of state sentencing

18   law).   Moreover, Petitioner's Confrontation Clause claim lacks merit.

19    In support of Ground Three, Petitioner states that during the sentencing hearing, the

20   prosecutor referred to "numerous victim impact statements" which the trial judge also

21   considered.  (docket # 1 at 35-36, citing Tr. 1/23/04 at 19, 36-37) (Respondents' Exh. G at

22   19)   Petitioner asserts that he "had no opportunity to review [the victim impact statements],

23   cross-examine the proponents, or rebut their content. . . ."  (docket # 1 at 35)   Petitioner

24   contends that the victim impact statements were testimonial and, therefore, their admission

25   under the circumstances of this case violated the Sixth Amendment.  (docket # 1 at 36)   In

26   support of his claims, Petitioner cites *Crawford v. Washington*, 541 U.S. 36 (2004), where

27   the Supreme Court held that the government cannot introduce out-of-court testimonial

28   evidence against a defendant in a criminal trial unless the declarant is unavailable at trial and

1    the defendant had a prior opportunity for cross-examination. *Id*. at 68.  At issue, is whether,

2    under *Crawford*, a defendant has a right to confrontation at sentencing.

3         The Sixth Amendment protects the right of the accused "to be confronted with the

4    witnesses against him" "[i]n all criminal prosecutions." U.S. Const. amend. VI.  In

5    discussing pre-trial rights, the Supreme Court has stated that "the right to confrontation is a

6    *trial* right."  *Pennsylvania v. Ritchie*, 480 U.S. 39, 52 (1987) (emphasis added).   The

7    Supreme Court's decision in *Crawford* does not require a different conclusion.

8         Several circuit courts have reached the same conclusion. The First Circuit has held

9    that "*Crawford* does not apply to sentencing," *United States v. Monteiro*, 417 F.3d 208, 215

10   (1st Cir.2005).  The Second Circuit has stated that *Crawford* provides no basis to reconsider

11   Supreme Court precedent establishing the permissibility "of out-of-court statements at

12   sentencing." *United States v. Martinez*, 413 F.3d 239, 243 (2d Cir. 2005). The Fifth, Sixth,

13   Seventh, Eighth, Tenth, and Eleventh Circuits have also recognized that the right to

14   confrontation does not apply to sentencing. *See United States v. Navarro*, 169 F.3d 228, 236

15   (5th Cir.1999); *United States v. Kirby*, 418 F.3d 621, 627-28 (6th Cir.2005); *Szabo v. Walls*,

16   313 F.3d 392, 398 (7th Cir.2002); *United States v. Fleck*, 413 F.3d 883, 894 (8th Cir.2005);

17   *United States v. Powell*, 973 F.2d 885, 893 (10th Cir.1992); *United States v. Cantellano*, 430

18   F.3d 1142, 1146 (11th Cir. 2005).

19        The *Crawford* decision deals with trial rights.  Following the sound reasoning of the

20   above-listed circuit courts, the Court concludes that the right to confrontation is not a

21   sentencing right.  Accordingly, Petitioner's Sixth Amendment challenge to the sentencing

22   court's consideration of victim impact statements lacks merit.

23        Additionally, the Supreme Court recognizes that victim impact statements are

24   admissible during sentencing.  In *Booth v. Maryland*, 482 U.S. 496, 509 (1987), the

25   Supreme Court held that the introduction of a victim impact statement during the sentencing

26   phase of a capital case violated the Eighth Amendment.   In *Payne v. Tennessee*, 501 U.S.

27   808, 825, 827 (1991), the Supreme Court overruled *Booth*, in part, by holding that the Eighth

28   Amendment does not erect a *per se* barrier to the admission of all victim impact evidence.

1    However, the *Payne* ruling retains *Booth's* prohibition on admitting characterizations and

2    opinions from the victim's family about the crime, the defendant, or the appropriate

3    sentence. *Id.* at 830 n. 2. (upholding over eighth amendment challenge admission of victim

4    impact evidence at sentencing phase of capital trial).  Victim impact statements are

5    admissible at sentencing unless their admission would be "so unduly prejudicial that it

6    renders the sentence fundamentally unfair." *Gretzler v. Stewart*, 112 F.3d 992, 1009 (9th

7    Cir.1997); *see also Payne*, 501 U.S. at 827.  When a judge, as opposed to the jury, reviews

8    victim impact statements, we presume that the judge properly applied the law and

9    considered only the evidence he knew to be admissible. *Gretzler*, 112 F.3d at 1009; *see also*

10   *Walton v. Arizona*, 497 U.S. 639, 653  (1990), *overruled on other grounds by Ring v.*

11   *Arizona*, 122 S.Ct. 2428 (2002).

12       Here, there is no evidence that the trial judge considered the victim impact statements

13   improperly in sentencing Petitioner. *Beaty v. Stewart*, 303 F.3d 975 (9th Cir. 2002) (rejecting

14   habeas petitioner's claim that introduction of victim impact statements during sentencing

15   violated the Sixth Amendment).   Also, contrary to Petitioner's assertion, the victim impact

16   statements were disclosed to the defense before sentencing.  (Respondents' Exh. L at exhibit

17   3; Exh. G at 23)   The victim impact statements were attached to the presentence "report and

18   separated so they can be made an exhibit for all parties to see. . . . ."  (Respondents' Exh. L

19   at exhibit 3)  During the sentencing hearing, defense counsel indicated that he had read the

20   presentence report.  (Respondents' Exh. G at 23)   In view of the foregoing, the court's

21   consideration of victim impact statements during sentencing did not give rise to a

22   constitutional violation.

23       **B.  Ground Five**

24       In Ground Five, Petitioner asserts that the trial court did not properly calculate his

25   presentence incarceration credit.  (docket # 1 at 28)  Although the trial court gave Petitioner

26   credit for 328 days, Petitioner argues he was deprived presentence incarceration credit for

27   time that he was incarcerated in Oregon awaiting sentencing in a different case.  Petitioner

28   does not cite any specific federal law in support of Ground Five.  Rather, he "asks [the

1    court] for a little help" in identifying the governing law and states that he believes the Equal

2    Protection Clause or the Eighth Amendment applies.  (docket # 1 at 40-41)  The calculation

3    of presentence incarceration credit is a state law matter which Petitioner cannot transform

4    into a federal claim by citing federal law.  *Poland*, 169 F.3d at 584; *See* A.R.S. § 13-709(B)

5    (stating that "[a]ll time actually spent in custody pursuant to an offense until the prisoner is

6    sentenced to imprisonment for such offense shall be credited against the term of

7    imprisonment otherwise provided for by this chapter.")   Moreover, there is no federal

8    constitutional right to presentence incarceration credit.  *Lewis v. Cardwell*, 609 F.2d 926,

9    928 (9th Cir. 1979) (quoting *Gray v. Warden of Montana State Prison*, 523 F.2d 989, 990

10   (9th Cir. 1975) (stating that "[t]he origin of the modern concept of pre-conviction jail time

11   credit upon the term of the ultimate sentence of imprisonment is of legislative grace and not

12   a constitutional guarantee.")).

13          Because Petitioner's claim in Count Five challenges the application of state law, it is

14   not cognizable on federal habeas corpus review. *See* 28 U.S.C. § 2254; *McGuire*, 502 U.S. at

15   67-68; *Ylst*, 921 F.2d 882 (federal court has no authority to review state application of state

16   law).

17   **III.  Ground Four**

18          In Ground Four, Petitioner alleges that the State violated his Fifth and Sixth

19   Amendment rights by providing insufficient notice of the charges against him and of the

20   State's intention to seek an aggravated sentence.  (docket # 1 at 27, 37-40)  Respondents

21   argue that Ground Four should be denied as procedurally defaulted and barred from federal

22   habeas corpus review.  (docket # 12)   As discussed below, Petitioner has procedurally

23   defaulted his claims in Ground Four.

24          **A.  Legal Principles**

25          A federal court may not grant a petition for writ of habeas corpus unless the petitioner

26   has exhausted the state remedies available to him.  28 U.S.C. § 2254(b).  When seeking

27   habeas relief, petitioner bears the burden of showing that he has properly exhausted each

28   claim.  *Cartwright v. Cupp*, 650 F.2d 1103, 1104 (9th Cir. 1981)(*per curiam*). The exhaustion

1   inquiry focuses on the availability of state remedies at the time the petition for writ of habeas

2   corpus is filed in federal court. *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999). The prisoner

3   "shall not be deemed to have exhausted . . . if he has the right under the law of the State to

4   raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). In other

5   words, proper exhaustion requires the prisoner to "give the state courts one full opportunity

6   to resolve any constitutional issues by invoking one complete round of the State's

7   established appellate review process." *O'Sullivan*, 526 U.S. 845. "One complete round"

8   includes filing a "petition[] for discretionary review when that review is part of the ordinary

9   appellate review procedure in the State." *Id.* State prisoners may skip a procedure

10  occasionally employed by a state's courts to provide relief only if a state law or rule

11  precludes use of the procedure, or the "State has identified the procedure as outside the

12  standard review process and has plainly said that it need not be sought for purposes of

13  exhaustion. *Id.* at 848, 850.

14       To exhaust state remedies, a petitioner must afford the state courts the opportunity to

15  rule upon the merits of his federal claims by "fairly presenting" them to the state's "highest"

16  court in a procedurally appropriate manner. *Castille v. Peoples*, 489 U.S. 346, 349 (1989);

17  *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (stating that "[t]o provide the State with the

18  necessary 'opportunity,' the prisoner must "fairly present" her claim in each appropriate

19  state court . . . thereby alerting the court to the federal nature of the claim."). In Arizona,

20  unless a prisoner has been sentenced to death, the "highest court" requirement is satisfied if

21  the petitioner has presented his federal claim to the Arizona Court of Appeals either on

22  direct appeal or in a petition for post-conviction relief. *Crowell v. Knowles* , 483 F.Supp.2d

23  925 (D.Ariz. 2007) (discussing *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999)).

24  Contrary to Respondents' assertion, Petitioner was not required to present his claims to the

25  Arizona Supreme Court.

26       In addition to presenting his claims to the proper court, a state prisoner must fairly

27  present his claims to that court to satisfy the exhaustion requirement. A claim is "fairly

28  presented" in state court only if a petitioner has described both the operative facts and the

1    federal legal theory on which his claim is based. *Reese*, 541 U.S. at 28. It is not enough that

2    all of the facts necessary to support the federal claim were before the state court or that a

3    "somewhat similar" state law claim was raised. *Reese*, 541 U.S. at 28 (stating that a

4    reference to ineffective assistance of counsel does not alert the court to federal nature of the

5    claim). Rather, the habeas petitioner must cite in state court to the specific constitutional

6    guarantee upon which he bases his claim in federal court. *Tamalini v. Stewart*, 249 F.3d

7    895, 898 (9th Cir. 2001). Similarly, general appeals to broad constitutional principles, such

8    as due process, equal protection, and the right to a fair trial, are insufficient to establish fair

9    presentation of a federal constitutional claim. *Lyons v. Crawford*, 232 F.3d 666, 669 (9th

10   Cir. 2000), *amended on other grounds*, 247 F.3d 904 (9th Cir. 2001); *Shumway v. Payne*,

11   223 F.3d 982, 987 (9th Cir. 2000) (insufficient for prisoner to have made "a general appeal

12   to a constitutional guarantee," such as a naked reference to "due process," or to a

13   "constitutional error" or a "fair trial"). Likewise, a mere reference to the "Constitution of

14   the United States" does not preserve a federal claim. *Gray v. Netherland*, 518 U.S. 152,

15   162-63 (1996). Even if the basis of a federal claim is "self-evident" or if the claim would be

16   decided "on the same considerations" under state or federal law, the petitioner must make

17   the federal nature of the claim "explicit either by citing federal law or the decision of the

18   federal courts . . . ." *Lyons*, 232 F.3d at 668. A state prisoner does not fairly present a claim

19   to the state court if the court must read beyond the pleadings filed in that court to discover

20   the federal claim. *Baldwin*, 541 U.S. at 27.

21        In sum, "a petitioner fairly and fully presents a claim to the state court for purposes of

22   satisfying the exhaustion requirement if he presents the claim: (1) to the proper forum, (2)

23   through the proper vehicle, and (3) by providing the proper factual and legal basis for the

24   claim." *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005)(citations omitted).

25        A habeas petitioner's claims may be precluded from federal review in either of two

26   ways. First, a claim may be procedurally defaulted in federal court if it was actually raised

27   in state court but found by that court to be defaulted on state procedural grounds such as

28   waiver or preclusion. *Ylst v. Nunnemaker*, 501 U.S. 797, 802-05 (1991); *Coleman*, 501 U.S.

1   at 729-30.  Thus, a state prisoner may be barred from raising federal claims that he did not

2   preserve in state court by making a contemporaneous objection at trial, on direct appeal, or

3   when seeking post-conviction relief.  *Bonin v. Calderon*, 59 F.3d 815, 842 (9th Cir. 1995)

4   (stating that failure to raise contemporaneous objection to alleged violation of federal rights

5   during state trial constitutes a procedural default of that issue); *Thomas v. Lewis*, 945 F.2d

6   1119, 1121 (9th Cir. 1991) (finding claim procedurally defaulted where the Arizona Court of

7   Appeals held that habeas petitioner had waived claims by failing to raise them on direct

8   appeal or in first petition for post-conviction relief.)  If the state court also addressed the

9   merits of the underlying federal claim, the "alternative" ruling does not vitiate the

10  independent state procedural bar.  *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989); *Carringer*

11  *v. Lewis*, 971 F.2d 329, 333 (9th Cir. 1992) (state supreme court found ineffective assistance

12  of counsel claims "barred under state law," but also discussed and rejected the claims on the

13  merits, *en banc* court held that the "on-the-merits" discussion was an "alternative ruling"

14  and the claims were procedurally defaulted and barred from federal review).  A higher

15  court's subsequent summary denial of review affirms the lower court's application of a

16  procedural bar.  *Nunnemaker*, 501 U.S. at 803.

17          The second procedural default scenario arises when a state prisoner failed to present

18  his federal claims to the state court, but returning to state court would be "futile" because the

19  state courts' procedural rules, such as waiver or preclusion, would bar consideration of the

20  previously unraised claims.  *Teague v. Lane*, 489 U.S. 288, 297-99 (1989); *Beaty v. Stewart*,

21  303 F.3d 975, 987 (9th Cir. 2002); *State v. Mata*, 185 Ariz. 319, 322-27, 916 P.2d 1035,

22  1048-53 (1996); Ariz. R. Crim. P. 32.2(a) & (b); Ariz. R. Crim. P. 32.1(a)(3) (post-

23  conviction review is precluded for claims waived at trial, on appeal, or in any previous

24  collateral proceeding); 32.4(a); Ariz. R. Crim. P. 32.9 (stating that petition for review must

25  be filed within thirty days of trial court's decision).  A state post-conviction action is futile

26  where it is time-barred.  *Beaty*, 303 F.3d at 987; *Moreno v. Gonzalez*, 116 F.3d 409, 410 (9th

27  Cir. 1997) (recognizing untimeliness under Ariz. R. Crim. P. 32.4(a) as a basis for dismissal

28  of an Arizona petition for post-conviction relief, distinct from preclusion under Rule

1    32.2(a)).  This type of procedural default is known as "technical" exhaustion because

2    although the claim was not actually exhausted in state court, the petitioner no longer has an

3    available state remedy.  *Coleman*, 501 U.S. at 732 ("A habeas petitioner who has defaulted

4    his federal claims in state court meets the technical requirements for exhaustion; there are no

5    remedies any longer 'available' to him.").

6           In either case of procedural default, federal review of the claim is barred absent a

7    showing of "cause and prejudice" or a "fundamental miscarriage of justice."  *Dretke v.*

8    *Haley*, 541 U.S. 386, 393-94, (2004); *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  To

9    establish "cause," a petitioner must establish that some objective factor external to the

10   defense impeded his efforts to comply with the state's procedural rules.  *Id.*  The following

11   objective factors may constitute cause: (1) interference by state officials, (2) a showing that

12   the factual or legal basis for a claim was not reasonably available, or (3) constitutionally

13   ineffective assistance of counsel.  *Id.*  Ordinarily, the ineffective assistance of counsel in

14   collateral proceedings does not constitute cause because "the right to counsel does not

15   extend to state collateral proceedings or federal habeas proceedings." *Martinez-Villareal v.*

16   *Lewis*, 80 F.3d 1301, 1306 (9th Cir. 1996).

17          Prejudice is actual harm resulting from the constitutional violation or error.  *Magby v.*

18   *Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984).  To establish prejudice, a habeas petitioner

19   bears the burden of demonstrating that the alleged constitutional violation "worked to his

20   actual and substantial disadvantage, infecting his entire trial with error of constitutional

21   dimension."  *United States v. Frady*, 456 U.S. 152, 170 (1982); *Thomas v. Lewis*, 945 F.2d

22   1119, 1123 (9th Cir. 1996).  Where petitioner fails to establish cause, the court need not

23   reach the prejudice prong.

24          A federal court may also review the merits of a procedurally defaulted claim if

25   petitioner demonstrates that failure to consider the merits of his claim will result in a

26   "fundamental miscarriage of justice."  *Schlup v. Delo*, 513 U.S. 298, 327 (1995).  A

27   "fundamental miscarriage of justice" occurs when a constitutional violation has probably

28   resulted in the conviction of one who is actually innocent.  *Id.*  To satisfy the "fundamental

1    miscarriage of justice" standard, petitioner must establish that it is more likely than not that

2    no reasonable juror would have found him guilty beyond a reasonable doubt in light of new

3    evidence. *Schlup*, 513 U.S. at 327; 28 U.S.C. § 2254(c)(2)(B). Even if petitioner asserts a

4    claim of actual innocence to excuse his procedural default of a federal claim, federal habeas

5    relief may not be granted absent a finding of an independent constitutional violation

6    occurring in the state criminal proceedings. *Dretke*, 541 U.S. at 393-94.

7              **B. Application of Law to Ground Four**

8              As previously stated, in Ground Four, Petitioner asserts that the State violated his

9    Fifth and Sixth Amendment rights by failing to provide sufficient notice of the charges

10   against him or of the State's intention to seek an aggravated sentence. Petitioner did not

11   properly present his claims raised in Ground Four to the state courts. (Respondents' Exh. K)

12   Indeed, Petitioner concedes that he never presented these claims to the state courts. Rather,

13   he argues that these issues were "indirectly raised with the issues violating *Blakely* and the

14   illegal use of aggravating factors not found by a jury. The statutory language missing from

15   the indictment was discovered when [Petitioner] was preparing this federal habeas corpus

16   [petition.]" (docket # 1 at 27)

17             A petitioner satisfies the exhaustion requirement by fairly presenting a federal claim

18   to the appropriate state courts in the proper manner. *Vasquez v. Hillery*, 474 U.S. 254, 257

19   (1986). As Petitioner admits, he did not properly present any of his federal claims raised in

20   Ground Four to the state courts. Petitioner's assertion that the claims in Ground Four were

21   "indirectly raised" with other claims is not sufficient to satisfy the exhaustion requirement.

22   *See Joubert v. Hopkins*, 75 F.3d 1232, 1240 (8th Cir. 1996) (stating that a "claim has been

23   fairly presented when a petitioner has properly raised the same factual and legal theories in

24   the state courts which he is attempting to raise in his federal habeas petition.")

25             The claims raised in Ground Four are technically exhausted and procedurally barred,

26   because a return to state court to present those claims would be futile because they would be

27   procedurally barred pursuant to Arizona law. First, Petitioner is time-barred under Arizona

28   law from raising these claims in a successive petition for post-conviction relief  because the

1   time for filing a notice of post-conviction relief has long expired. *See* Ariz.R.Crim.P. 32.1

2   and 32.4 (a petition for post-conviction relief must be filed "within ninety days after the

3   entry of judgment and sentence or within thirty days after the issuance of the order and

4   mandate in the direct appeal, whichever is later.")  Although Rule 32.4 does not bar dilatory

5   claims if they fall within the category of claims specified in Ariz.Crim.P 32.1(d) through

6   (h), Petitioner has not asserted that any of these exceptions apply to him.  Moreover, a state

7   post-conviction action is futile where it is time-barred. *Beaty v. Stewart*, 303 F.3d 975, 987

8   (9th Cir. 2002); *Moreno v. Gonzalez*, 116 F.3d 409, 410 (9th Cir. 1997) (recognizing

9   untimeliness under Ariz. R. Crim. P. 32.4(a) as a basis for dismissal of an Arizona petition

10  for post-conviction relief, distinct from preclusion under Rule 32.2(a)).

11       Furthermore, under Rule 32.2(a) of the Arizona Rules of Criminal Procedure, a

12  defendant is precluded from raising claims that could have been raised on direct appeal or in

13  any previous collateral proceeding. *See Krone v. Hotham*, 181 Ariz. 364, 366, 890 P.2d

14  1149, 1151 (1995) (capital defendant's early petition for post-conviction relief raised limited

15  number of issues and waived other issues that he could have then raised, but did not); *State*

16  *v. Curtis*, 185 Ariz. 112,113, 912 P.2d 1341, 1342 (App. 1995) ("Defendants are precluded

17  from seeking post-conviction relief on grounds that were adjudicated, or could have been

18  raised and adjudicated, in a prior appeal or prior petition for post-conviction relief."); *State*

19  *v. Berryman*, 178 Ariz. 617, 624, 875 P.2d 850, 857 (App. 1994) (defendant's claim that his

20  sentence had been improperly enhanced by prior conviction was precluded by defendant's

21  failure to raise issue on appeal).   The claims asserted in Ground Four could have, and

22  should have, been properly raised on post-conviction review.   Accordingly, the State court

23  would find those claims procedurally barred.

24       **1. Cause and Prejudice**

25       As set forth above, Petitioner's claims in Ground Four are procedurally defaulted and

26  barred from federal habeas review absent a showing of "cause and prejudice" or a

27  "fundamental miscarriage of justice."

28

1    To establish "cause," a petitioner must establish that some objective factor external to

2    the defense impeded his efforts to comply with the state's procedural rules. *Murray*, 477

3    U.S. at 488-492.  The following objective factors may constitute cause: (1) interference by

4    state officials, (2) a showing that the factual or legal basis for a claim was not reasonably

5    available, or (3) constitutionally ineffective assistance of counsel. *Id.*  Prejudice is actual

6    harm resulting from the constitutional violation or error. *Magby v. Wawrzaszek*, 741 F.2d

7    240, 244 (9th Cir. 1984).  Where petitioner fails to establish cause for his procedural default,

8    the court need not consider whether petitioner has shown actual prejudice resulting from the

9    alleged constitutional violations. *Smith v. Murray*, 477 U.S. 527, 533 (1986).

10    Petitioner does not assert any specific basis to overcome the procedural bar.  (docket

11    # 13)  As a general matter, Petitioner's *pro se* status and ignorance of the law do not satisfy

12    the cause standard. *Hughes v. Idaho State Bd. of Corrections*, 800 F.2d 905, 908 (9th Cir.

13    1986); *Tacho v. Martinez*, 862 F.2d 1376, 1381 (9th Cir. 1988).  Because Petitioner offers

14    no legitimate "cause" which precluded him from properly exhausting his state remedies, the

15    Court declines to reach the issue of prejudice. *Engle*, 456 U.S. at 134 n. 43.

16    **2. Fundamental Miscarriage of Justice**

17    Additionally, Petitioner has not shown that failure to consider his claims raised in

18    Ground Four will result in a fundamental miscarriage of justice. A federal court may review

19    the merits of a procedurally defaulted habeas claim if the petitioner demonstrates that failure

20    to consider the merits of his claim will result in a "fundamental miscarriage of justice."

21    *Schlup v. Delo*, 513 U.S. 298, 327 (1995).  A "fundamental miscarriage of justice" occurs

22    when a constitutional violation has probably resulted in the conviction of one who is actually

23    innocent. *Id.*

24    This gateway "actual innocence" claim differs from a substantive actual innocence

25    claim. *Smith v. Baldwin*, 466 F.3d 805, 811-12 (9th Cir. 2006).  The Supreme Court

26    described the gateway showing in *Schlup*, 513 U.S. at 315-16, as a less stringent standard

27    than a substantive claim of actual innocence. *See also Carriger v. Stewart*, 132 F.3d 463,

28    476 (9th Cir. 1997) (suggesting that a "habeas petitioner asserting a freestanding innocence

1    claim must go beyond demonstrating doubt about his guilt and must affirmatively prove that

2    he is innocent.").  If Petitioner passes through the *Schlup* gateway, the court is only

3    permitted to review his underlying constitutional claims.  *Smith*, 466 F.3d at 807.  The

4    fundamental miscarriage of justice exception applies only to a "narrow class of cases" in

5    which a petitioner makes the extraordinary showing that an innocent person was probably

6    convicted due to a constitutional violation.  *Schlup v. Delo*, 513 U.S. 298, 231 (1995).  To

7    demonstrate a fundamental miscarriage of justice, Petitioner must show that "a constitutional

8    violation has resulted in the conviction of one who is actually innocent."  *Schlup*, 513 U.S. at

9    327.  To establish the requisite probability, Petitioner must prove with new reliable evidence

10   that "it is more likely than not that no reasonable juror would have found petitioner guilty

11   beyond a reasonable doubt."  *Schlup*, 513 U.S. at 324, 327.  New evidence presented in

12   support of a fundamental miscarriage of justice may include "exculpatory scientific

13   evidence, trustworthy eyewitness accounts, or critical physical evidence that was not

14   presented at trial."  *Id.* at 324, *see also, House v. Bell*, 547 U.S. 518 (2006) (stating that a

15   fundamental miscarriage of justice contention must involve evidence that the trial jury did

16   not have before it).

17          Petitioner has not established that, in light of newly discovered evidence, "it is more

18   likely than not that no reasonable juror would have found petitioner guilty beyond a

19   reasonable doubt."  *Schlup*, 513 U.S. at 324, 327.

20   **IV.  Grounds One and Two**

21          Respondents concede that Grounds One and Two are properly before the Court and

22   argue that those claims are meritless.  The court will consider the merits of Grounds One and

23   Two after setting forth the standard of review.

24          **A.  Standard of Review**

25          In 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act

26   ("AEDPA") which "modified a federal habeas court's role in reviewing state prisoner

27   applications in order to prevent federal habeas 'retrials' and to ensure that state-court

28

1   convictions are given effect to the extent possible under the law." *Bell v. Cone*, 535 U.S.

2   685, 693 (2002).

3        Under the AEDPA, a federal court may not grant a habeas petition  "with respect to

4   any claim that was adjudicated on the merits in state court" unless the state court's decision

5   was either (1) "contrary to, or involved an unreasonable application of, clearly established

6   Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an

7   unreasonable determination of the facts in light of the evidence presented in the State court

8   proceeding."  28 U.S.C. § 2254(d)(1),(2); *Carey v. Musladin*, 549 U.S. 70 (2006); *Lockyer v.*

9   *Andrade*, 538 U.S. 63, 75-76 (2003); *Mancebo v. Adams*, 435 F.3d 977, 978 (9th Cir. 2006).

10  To determine whether a state court ruling was "contrary to" or involved an "unreasonable

11  application" of federal law, courts look exclusively to the holdings of the Supreme Court

12  which existed at the time of the state court's decision.  *Mitchell v. Esparza*, 540 U.S. 12, 15-

13  15 (2003); *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003).  Accordingly, the Ninth Circuit has

14  acknowledged that it cannot reverse a state court decision merely because that decision

15  conflicts with Ninth Circuit precedent on a federal constitutional issue.  *Brewer v. Hall*, 378

16  F.3d 952, 957 (9th Cir. 2004); *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003).

17       Even if the state court neither explained its ruling nor cited United States Supreme

18  Court authority, the reviewing federal court must nevertheless examine Supreme Court

19  precedent to determine whether the state court reasonably applied federal law.  *Early v.*

20  *Packer*, 537 U.S. 3, 8 (2003).  The United States Supreme Court has expressly held that

21  citation to federal law is not required and that compliance with the habeas statute "does not

22  even require awareness of our cases, so long as neither the reasoning nor the result of the

23  state-court decision contradicts them." *Id.*

24       A state court's decision is "contrary to" federal law if it applies a rule of law "that

25  contradicts the governing law set forth in [Supreme Court] cases or if it confronts a set of

26  facts that are materially indistinguishable from a decision of [the Supreme Court] and

27  nevertheless arrives at a result different from [Supreme Court] precedent." *Mitchell v.*

28  *Esparza*, 540 U.S 12, 14 (2003) (citations omitted); *Williams v. Taylor*, 529 U.S. 362, 411

1 | (2000).

2 |     A state court decision is an "unreasonable application of" federal law if the court

3 | identifies the correct legal rule, but unreasonably applies that rule to the facts of a particular

4 | case. *Williams*, 529 U.S. at 405; *Brown v. Payton*, 544 U.S. 133, 141 (2005).   An incorrect

5 | application of federal law does not satisfy this standard. *Yarborough v. Alvarado*, 541 U.S.

6 | 652, 665-66 (2004) (stating that "[r]elief is available under § 2254(d)(1) only if the state

7 | court's decision is objectively unreasonable.") "It is not enough that a federal habeas court,

8 | in its independent review of the legal question," is left with the "firm conviction" that the

9 | state court ruling was "erroneous." *Id.*; *Andrade*, 538 U.S. at 75.  Rather, the petitioner must

10 | establish that the state court decision is "objectively unreasonable." *Middleton v. McNeil*,

11 | 541 U.S. 433 (2004); *Andrade*, 538 U.S. at 76.

12 |     In conducting an analysis under the AEDPA, the habeas court considers the last

13 | reasoned state court decision addressing the claim. *Ylst v. Nunnemaker*, 501 U.S. 797, 803

14 | (1991). Additionally, the habeas court presumes that the state court's factual determinations

15 | are correct and petitioner bears the burden of rebutting this presumption by clear and

16 | convincing evidence.  28 U.S.C. § 2254(e)(1) (stating that "a determination of factual issues

17 | made by a State court shall be presumed to be correct.  The applicant shall have the burden

18 | of rebutting the presumption of correctness by clear and convincing evidence."); *Williams v.*

19 | *Rhoades*, 354 F.3d 1101, 1106 (9th Cir. 2004).

20 |     Where a state court decision is deemed  "contrary to" or an "unreasonable application

21 | of" clearly established federal law, the reviewing court must next determine whether it

22 | resulted in constitutional error. *Benn v. Lambert*, 283 F.3d 1040, 1052 n. 6 (9th Cir. 2002).

23 | On habeas review, the court assesses the prejudicial impact of most constitutional errors by

24 | determining whether they "had substantial and injurious effect or influence in determining

25 | the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (quoting *Kotteakos v.*

26 | *United States*, 328 U.S. 750, 776 (1946)); *see also Fry v. Pliler*, 551 U.S. 112 (2007) (*Brecht*

27 | standard applies whether or not the state court recognized the error and reviewed it for

28 | harmlessness).  The *Brecht* harmless error analysis also applies to habeas review of a

1  sentencing error.  The test is whether such error had a "substantial and injurious effect" on

2  the sentence.  *Calderon v. Coleman*, 525 U.S. 141, 145-57 (1998) (holding that for habeas

3  relief to be granted based on constitutional error in capital penalty phase, error must have

4  had substantial and injurious effect on the jury's verdict in the penalty phase.); *Hernandez v.*

5  *LaMarque*, 2006 WL 2411441 (N.D.Cal., Aug. 18, 2006) (finding that even if the evidence

6  of three of petitioner's prior convictions was insufficient, petitioner was not prejudiced by

7  the court's consideration of those convictions because the trial court found four other prior

8  convictions which would have supported petitioner's sentence.)  The Court will review

9  Petitioner's claims asserted in Grounds One and Two under the applicable standard of

10 review.

11    **B.  Analysis**

12        In Ground One, Petitioner argues that the trial court violated his Sixth and Fourteenth

13 Amendment rights by sentencing him to an aggravated sentence in the absence of factual

14 findings by a jury.  (docket # 1 at 24, 31-33)   In Ground Two, Petitioner raises a related

15 claim that the court violated his Sixth Amendment rights by using a "historical prior

16 conviction" "as an aggravating factor to enhance his sentence."  (docket # 1 at 25, 33-35)

17 Petitioner properly presented these claims to the state courts on post-conviction review.

18 The state court rejected these claims.  (Respondents' Exhs. K, N)  As discussed below,

19 Petitioner has not shown that the state court's decision was contrary to, or an unreasonable

20 application, of federal law.  28 U.S.C. § 2254(d).

21    **1.  Waiver Pursuant to Guilty Plea**

22        Respondents argue that Petitioner waived his Sixth Amendment challenge to his

23 sentences pursuant to his guilty plea.  (docket # 12 at 19-21)   The Court agrees that

24 Petitioner's guilty plea effectively waived his right to challenge his sentences on Sixth

25 Amendment grounds.

26        In his guilty plea, Petitioner specifically agreed that, by pleading guilty, he "waived

27 and g[ave] up any and all motions, defenses, objections, or requests which he has made or

28 raised, or could assert hereafter, to the court's entry of judgment against him and imposition

of a sentence upon him consistent with this agreement." (Respondents' Exh. C at 2)

Petitioner specifically agreed that he would be "sentenced to the Department of Corrections on Amended Count Two for a term not to exceed ten years." (Respondents' Exh. C at 1; Exh. E at 5-7)   During the change of plea hearing, the court advised Petitioner that he faced a sentencing range of 3.5 to 16.25 years imprisonment if convicted of theft with a prior conviction, Amended Count II.   (Respondents' Exh. E at 5-7)   The court also reminded Petitioner that the plea agreement he had entered into with the State provided that as to Amended Count II, Petitioner would "be sentenced to the Department of Corrections for a term not to exceed 10 years . . . ." (Respondents' Exh. E at 7)   On post-conviction review Petitioner challenged his sentences on *Blakely* grounds, and the trial court enforced Petitioner's waiver.   (Respondents' Exhs. K, N)

        As the state court found, Petitioner's guilty plea waived his right challenge to his sentences on *Blakely* grounds.  *See United States v. Shedrick,* 493 F.3d 292, 303 (3ʳᵈ Cir. 2007) (concluding that defendant's "*Blakely*-based contention," was  argument that defendant "waived as part of [his] plea agreement."); *United States v. Cortez-Arias*, 403 F.3d 1111 (9ᵗʰ Cir. 2005), *amended by* 425 F.3d 547, 548 n. 8 (2005) (joining other circuits in concluding that claim under *[United States v.] Booker*, 543 U.S. 220 (2005) was waived when he waived the right to appeal his sentence, noting that in exchange for his guilty plea and waiver, the defendant received a benefit).   Moreover, Petitioner's sentencing challenges lack merit as discussed below.

### 2.  Merits of Ground One

        In Ground One, Petitioner argues that his aggravated sentence imposed on Amended Count II violates the Sixth Amendment because factors used to impose an aggravated sentence were not found by a jury beyond a reasonable doubt.  The controlling Supreme Court law is *Blakely v. Washington*, 542 U.S. 296 (2000) in which the Supreme Court held any factor which leads to a sentence greater than would be imposed based on the jury's finding of guilt must be found by a jury beyond a reasonable doubt.  Although Petitioner was sentenced in 2003 before *Blakely* was decided, that decision applies to this case because

1    Petitioner's challenge to his sentence was pending in his Rule-32 of right proceeding when

2    *Blakely* was decided on June 24, 2004.  (*see* docket # 12 at 19)

3           Here, the trial court imposed an aggravated 10-year sentence on Petitioner's

4    conviction for theft, a class 3 felony, with one prior conviction.  (Respondents' Exh. F)   In

5    the plea agreement, Petitioner admitted the prior conviction and admitted the factual basis

6    for his plea.  (Respondents' Exh. C)   In sentencing Petitioner, the trial court considered the

7    aggravating and mitigating factors.  (Respondents' Exh. G at 36)   As aggravating factors, the

8    court considered Petitioner's prior felony convictions, the "multiple victims," the crimes

9    were committed for pecuniary gain, the crimes were "committed while [Petitioner] was an

10   absconder under indictment in another jurisdiction," "the magnitude of the loss to the

11   victims," and "the [significant] emotional injury to the victims."  (Respondents' Exh. G at

12   36-37)   As discussed below, the court properly considered these factors in sentencing

13   Petitioner and did not violate Petitioner's Sixth Amendment rights.

14          The Sixth Amendment's jury-trial guarantee proscribes the imposition of a sentence

15   above the statutory maximum based on a fact, other than a prior conviction, not found by a

16   jury or admitted by the defendant. *Apprendi v. New Jersey*, 530 U.S. 466 (2000); *Blakely v.*

17   *Washington*, 542 U.S. 296 (2004); *United States v. Booker*, 543 U.S. 220 (2005).  Since it

18   first articulated this rule, the Supreme Court has retained an exception for prior convictions.

19   *Id.*; *United States v. Quintana-Quintana*, 383 F.3d 1052, 1053 (9th Cir. 2004); *United States*

20   *v. Maria-Gonzalez*, 268 F.3d 664, 670 (9th Cir. 2001) (holding that prior aggravated felony

21   conviction did not constitute an element of the offense where base sentence for illegally

22   reentering the United States following deportation is enhanced if deportation was subsequent

23   to conviction for aggravated felony); *United States v. Castillo-Rivera*, 244 F.3d 1020, 1025

24   (9th Cir. 2001) (holding that the district court could consider defendant's prior conviction in

25   imposing sentence enhancement even though such conduct had not been charged in the

26   indictment, presented to the jury, and proved beyond a reasonable doubt); *United States v.*

27   *Pacheco-Zepeda*, 234 F.3d 411, 415 (9th Cir. 2001) (noting that *Apprendi* held that all prior

28

1   convictions are exempt under *Apprendi's* new rule, therefore, district court properly

2   considered prior convictions in sentencing).

3           In *Blakely*, the Court applied the rule announced in *Apprend*i and clarified that the

4   "'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose

5   *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*. . .

6   .In other words, the relevant 'statutory maximum' is not the maximum sentence a judge may

7   impose after finding additional facts, but the maximum he may impose *without* any

8   additional findings." *Blakely*, 542 U.S. at 303-04 (emphasis in original).  The Court

9   concluded that before a trial court can impose a sentence above the statutory maximum, a

10  jury must find beyond a reasonable doubt, or defendant must admit, all facts "*legally*

11  *essential* to the punishment."  *Blakely*, 542 U.S. at 313 (emphasis added).

12          As previously stated, the court in this case sentenced Petitioner to an aggravated term

13  of 10 years' imprisonment.  (Respondents' Exh. G)  On direct review, Petitioner challenged

14  his aggravated sentence on the ground that the judge, rather then a jury, found the

15  aggravated factors in violation of the Sixth Amendment as discussed in *Blakely*.  The state

16  court rejected Petitioner's claim.  As discussed below, Petitioner has not established that the

17  state court decision is contrary to or involves an unreasonable application of federal law.

18  Accordingly, he is not entitled to habeas corpus relief.  28 U.S.C. § 2244.

19          Applying *Blakely*, several courts within the Ninth Circuit have held that a federal

20  habeas petitioner's "prior conviction alone" is sufficient to support the imposition of "a

21  sentence anywhere within the statutory range."  *Jones v. Schriro*, No. CV-05-3720-PHX-

22  JAT (DKD), 2006 WL 1794765, * 3 (D.Ariz., June 27, 2006).  In *Jones*, the court found no

23  *Blakely* violation where petitioner's aggravated sentence was based, in part, on a prior

24  conviction.  *Id.* at * 3 n. 2.  The court noted that "once a jury finds or a defendant admits a

25  single aggravating factor, the Sixth Amendment permits the sentencing judge to find and

26  consider additional factors relevant to the imposition of a sentence up to the maximum

27  prescribed in that statute.'" *Id.* at * 2 (quoting *State v. Martinez*, 210 Ariz. 578, 585, 115

28  P.2d 618 (2005)).  Thus, the *Jones* court found that rule of *Blakely* was satisfied once

1    petitioner admitted a single aggravating factor. *Id.* at * 3.   Specifically, petitioner in *Jones*

2    admitted either in the written plea agreement, at the change of plea hearing, or at sentencing

3    to three different aggravating factors. *Id.*  The *Jones* court found that petitioner's admission

4    of any one of those aggravating factors authorized the trial court to impose a sentence

5    anywhere within the statutory range. *Id.*

6    Similarly, in *Stokes v. Schriro*, 465 F.3d 397, 402-03 (9th Cir. 2006), the Ninth Circuit

7    held that "the Arizona state courts' interpretation of these [sentencing] provisions does not

8    contradict clearly established federal law [*Apprendi/Blakely*].  A statutory maximum need

9    not be defined by every one of the facts found at trial, so long as the defendant is not

10   exposed to a greater punishment than that authorized solely by those facts (or the fact of a

11   prior conviction) . . . Because the twenty-year sentence was authorized by the jury's

12   findings, no *Apprendi* violation occurred" and hence the federal habeas petitioner is "not

13   entitled to habeas relief on this claim." *Id.* at 402-03 (internal quotations and citations

14   omitted).

15   Additionally, in *Garcia v. Schriro*, No. 06-855-PHX-DGC (DKD), 2006 WL

16   3292473 (D.Ariz., Nov. 9, 2006), the district court held that petitioner's aggravated sentence

17   did not violate *Blakely*.  The court explained that the "trial court properly considered

18   petitioner's prior convictions as an aggravating circumstance that increased the maximum

19   allowable sentence under *Blakely*.  Once the new maximum was established, the court was

20   free to consider the other aggravating circumstances of parole violation and pecuniary gain

21   in deciding where to sentence petitioner within the new maximum range." *Id.* at * 2.  In so

22   finding, the court explained that Petitioner's admission of pecuniary gain in the plea

23   agreement was sufficient to establish an aggravating factor in accordance with *Blakely*.  *Id.*

24   at * 3.  The court also found that the trial court properly considered petitioner's prior

25   convictions even though the plea agreement provided that the state withdrew the allegations

26   of prior convictions. *Garcia*, 2006 WL 3292473, * 2.  The court noted that the prior

27   convictions were not alleged for enhancement purposes and that the court learned of the

28

1    prior convictions from a probation officer's presentence investigation report and from

2    petitioner's counsel.  *Id.*

3        In *Nino v. Flannigan*, No. 2:04cv2298-JWS (CRP), 2007 WL 1412493 (D.Ariz., May

4    14, 2007), the district court found that petitioner's aggravated sentence comported with

5    *Blakely* where one of the aggravating factors, a prior conviction, was *Blakely*-exempt, and

6    petitioner admitted the other aggravating factor during the plea colloquy.  *Id.* at * 4.  The

7    court explained that under A.R.S. § 13-702, the existence of a single aggravating factor

8    exposes a defendant to an aggravated sentence.  *Id.*  In *Nino*, the trial judge considered two

9    aggravating circumstances, "the criminal history beyond the alleged and proven and the

10   struggle with the officers."*Id.*  The court noted that *Blakely* does not require the fact of a

11   prior conviction be presented to and found by a jury beyond a reasonable doubt.  *Id.* (citing

12   *Blakely*, 542 U.S. 296) "A history of prior convictions is *Blakely* exempt."  *Id.*  Accordingly,

13   the *Nino* court held that because "one *Blakely* exempt factor supports the aggravated

14   sentence, consideration of other factors imposing sentence does not violate Petitioner's Fifth

15   and Sixth Amendment rights established in *Blakely*. *Id.*

16        Similarly, in this case, Petitioner pled guilty to theft, a class 3 felony with one prior

17   conviction.  (Respondents' Exhs. C, E)   Under the applicable Arizona law, at the time of

18   Petitioner's sentencing a conviction for theft, a class 3 felony, yielded a presumptive term of

19   6.5 years imprisonment.  (Respondents' Exh. E at 6)  The court could impose a mitigated

20   term as low as 3.5 years, or an aggravated term as high as 16.25 years.  (Respondents' Exh.

21   E at 6)  Petitioner's prior conviction is exempt from *Blakely's* jury trial requirement and

22   allowed the trial court to impose an aggravated sentence.  *Blakely*, 542 U.S. at 301-02.

23        Also exempt from *Blakely's* jury trial requirement are aggravating factors admitted by

24   the defedant.  *Blakely*, 542 U.S. at 303.  In addition to admitting that he had a prior

25   conviction, as part of the factual basis for his plea, Petitioner admitted that his offenses were

26   committed for pecuniary gain and that there were multiple victims.  (Respondents' Exh. C at

27   attachment B) (stating that Petitioner "obtained money in excess of $3,000 by means of

28   material misrepresentations with the intent to deprive the owners of the money and

1  converted the money for an unauthorized use . . . [Petitioner] transferred said funds to

2  Summerset Nassau Ltd. Account for his own use." And Petitioner "obtained money in

3  excess of $25,000 by means of material misrepresentations with the intent to deprive the

4  owners of the money and converted the money for an unauthorized use . . . [Petitioner]

5  transferred said funds to his personal bank account at Bank of America.")   At the sentencing

6  hearing, Petitioner referred to the "hurt" he inflicted on "so many people."  (Respondents'

7  Exh. G at 33-34)

8       Petitioner's admission of the factual bases for his guilty pleas, and his admission that

9  his conduct impacted multiple victims, supported the imposition of an aggravated sentence

10  without any additional findings.  *See Rivera v. Fizer*, No. 06-2904-PHX-PGR (JI), 2007 WL

11  2994808, * 11 (D.Ariz., Oct. 12, 2007) (stating that "the maximum sentence was . . .

12  authorized solely upon Petitioner's admission of multiple victims.")

13       Although the trial court also found several other aggravating factors, Petitioner's

14  prior felony convictions, and/or the aggravating factors which he admitted - multiple victims

15  and pecuniary gain - were sufficient to expose him to the aggravated term of imprisonment.

16  *Blakely*, 542 U.S. at 303-04.  In other words, without any additional jury findings,

17  Petitioner's prior conviction and/or the admitted aggravating factors expanded the

18  sentencing range to include an aggravated sentence.  Therefore, Petitioner's aggravated

19  sentence comports with the Sixth Amendment.

20

21       Based on the foregoing, the state court's finding that Petitioner's aggravated sentence

22  did not violate the Sixth Amendment is neither contrary to, nor an unreasonable application

23  of the Supreme Court's *Apprendi*/*Blakely* jurisprudence.

24       **3.  Merits of Ground Two**

25       In Ground Two, Petitioner asserts that his Sixth and Fourteenth Amendment rights

26  were violated when the court enhanced his sentence using a prior conviction that was neither

27  charged in the indictment nor proved to a jury.  (docket # 1 at 33-35)   In support of this

28  claim, Petitioner cites *Shepard v. United States*, 544 U.S. 13, 125 S.Ct. 1254 (2005) for the

1   proposition that "the Sixth Amendment requires a jury trial for a fact about a prior

2   conviction that cannot be conclusively proven in the judicial record."  (docket # 1 at 33)

3         *Shepard* was not a constitutional decision.  Rather, *Shepard* decided an issue of

4   statutory interpretation.   The issue in *Shepard* was whether the Armed Career Criminal Act

5   ("ACCA") permitted a sentencing court to consider police reports and complaint

6   applications to establish that prior convictions for burglary were violent felonies.  *Id.* at

7   1257.  In an earlier decision, *Taylor v. United States*, 495 U.S. 575 (1990), the Supreme

8   Court held that "the ACCA generally prohibits the later court from delving into particular

9   facts disclosed by the record of conviction" to determine the character of a prior conviction

10  for purposes of enhancing a sentence under the ACCA.  *Shepard*, 125 S.Ct. at 1257-58.  In

11  *Shepard*, the Court held that the rule of *Taylor* applies to convictions on pleas, as well as to

12  convictions on jury verdicts.  *Id.* at 1258, 59.

13        Petitioner's claim fails because the trial court at sentencing made a finding about the

14  fact of Petitioner's prior conviction, not the character of his conviction.  *Shepard* and *Taylor*

15  only restrict the sources a sentencing court may consider to determine the character of a

16  prior conviction as a violent felony under the ACCA.  The fact of a prior conviction may be

17  found by the sentencing court.  *See Almendarez-Torres v. United States*, 523 U.S. 224

18  (1998) (holding that the government need not allege in its indictment and need not prove

19  beyond a reasonable doubt that a defendant had prior convictions for a district court to use

20  those convictions for purposes of enhancing a sentence.")   Although some Supreme Court

21  justices have expressed disagreement with *Almendarez-Torres* after *Blakely*, that decision

22  has not been overruled and this Court is bound to follow it.  *See, Butler v. Curry*, 28 F.3d

23  624, 643 (9th Cir. 2008).

24  **V.  Conclusion**

25        In accordance with the foregoing, the Petition for Writ of Habeas Corpus should be

26  denied.

27        Accordingly,

28

1    **IT IS HEREBY RECOMMENDED** that Petitioner's Petition for Writ of Habeas

2    Corpus (docket # 1) be **DENIED.**

3    This recommendation is not an order that is immediately appealable to the Ninth

4    Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of

5    Appellate Procedure, should not be filed until entry of the District Court's judgment.  The

6    parties shall have ten days from the date of service of a copy of this recommendation within

7    which to file specific written objections with the Court.  *See,* 28 U.S.C. § 636(b)(1); Rules

8    72, 6(a), 6(e), Federal Rules of Civil Procedure.  Thereafter, the parties have ten days within

9    which to file a response to the objections.  Failure timely to file objections to the Magistrate

10   Judge's Report and Recommendation may result in the acceptance of the Report and

11   Recommendation by the District Court without further review.  *See United States v. Reyna-*

12   *Tapia,* 328 F.3d 1114, 1121 (9th Cir. 2003).  Failure timely to file objections to any factual

13   determinations of the Magistrate Judge will be considered a waiver of a party's right to

14   appellate review of the findings of fact in an order or judgment entered pursuant to the

15   Magistrate Judge's recommendation. *See*, Rule 72, Federal Rules of Civil Procedure.

16   DATED this 30th day of March, 2009.

17

18

19

20                          Lawrence O. Anderson
                            United States Magistrate Judge

21

22

23

24

25

26

27

28